**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

**Robert L. Weil,**

**and**

**The Weil Family Trust
c/o Robert L. Weil, Trustee**

**and**

**James Zahora**

       *Plaintiffs*,

**v.**                                                   **Case No. 3:11-cv-448
Judge Thomas M. Rose**

**Process Equipment Company of Tipp City,**

**and**

**PECO Holdings Corp.,**

**and**

**Albert Naggar
c/o Process Equipment Company of Tipp City,**

       *Defendants*.

---

      **ENTRY AND ORDER GRANTING MOTION OF PLAINTIFFS ROBERT l..
WEIL,** *et al.***, TO REMAND ACTION TO STATE COURT.** (DOC. 11).

---

      This matter is before the Court for decision on Motion of Plaintiffs Robert L. Weil, *et al.*,

to Remand Action to State Court. Doc. 11. The case was originally filed in the Ohio Court of

Common Pleas for Miami County, Ohio. Defendants removed the case to federal court, asserting original and removal jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1441, which allow for removal to federal court of cases that invoke a federal question. Doc. 1. Plaintiffs now request remand, asserting that the instant matter does not involve a federal claim, but rather is a state claim for breach of contract. Doc. 10. Because Plaintiffs maintain that their intention is to merely bring an Ohio state-law breach of contract claim, the Court will grant the motion.

I.   Background

According to the Amended Complaint, Process Equipment Co. of Tipp City, Ohio ("PECo") engaged in the design, engineering, and manufacturing of turn-key factory automation equipment, custom machines, and production lines with its principal place of business in Miami County, Ohio. Plaintiff Robert L. Weil was the Chief Executive Officer and a Director for PECo, and was a minority shareholder in PECO Holdings Corp. Plaintiff James Zahora was part of the management team of PECo, and a minority shareholder in PECO Holdings Corp. The Weil Family Trust was also a minority shareholder in PECO Holdings Corp. Defendant Albert Naggar is a Managing Partner of Buckingham Capital Partners, an investment firm in New York, and a non-executive Chairman of PECo.

PECo is an Ohio for-profit corporation and a wholly owned subsidiary of PECO Holdings Corp. Exh. I at ¶ 4. In 2005, Buckingham Capital acquired PECo, and Mr. Naggar asked Mr. Weil to join on as a consultant in 2006. *Id.* at ¶ 9. Later that year, Mr. Weil became a board member of PECo. *Id.* In 2009, Mr. Weil took over the day-to-day operations of PECo as its Chief Executive Officer under a CEO Compensation Plan. *Id.* In this role, Weil alleges he was able to turn the once-ailing company into a profitable entity by 2010. *Id.* Mr. Naggar, after seeing the success that Mr. Weil had with PECo, enlisted Weil to help with several other

companies that Buckingham had acquired, achieving similar results. *Id.* at ¶ 10.

After Buckingham's acquisition of PECo, Mr. Zahora was requested to purchase stock in the company, so he bought 42 shares in PECO Holdings Corp. *Id.* at ¶ 11. In 2008, Mr. Weil purchased a net of 35 shares. *Id.* Then in 2010 and 2011, Mr. Naggar authorized options allowing Mr. Weil to purchase 354 and 413 shares, respectively, of PECO Holdings Corp, which Weil exercised on July 14, 2011 in the name of the Weil Family Trust. *Id.*

Finally, in July, 2011, Mr. Naggar approached Mr. Weil respecting the purchase of a one-third interest in a new company formed by Naggar to acquire PECO Holdings Corp. for a $1 million case equity investment. *Id.* at ¶ 12. Naggar proposed that Weil pay $333,333, and Naggar and his father each pay $333,333. *Id.* To this, Weil offered a counter-proposal which was ultimately refused by Naggar. *Id.* at ¶ 13.

The negotiations between Weil and Naggar continued until August 10, 2011, when Naggar sent Weil an email terminating his employment and removing him from PECo's Board. *Id.* The following day, Naggar closed the pending deal himself, essentially eliminating all associated monies/obligations/shareholdings of the Plaintiffs. *Id.* at ¶¶ 12-14. By letter dated November 3, 2011, Mr. Weil received Notice that on October 25, 2011, PECO Holdings Corp. was merged into New PECO Holdings Corp., and was now a wholly owned subsidiary of New PECO. *Id.* at ¶ 14. The Plaintiffs received little or no advance notice that PECO Holdings was considering a merger, and they were not permitted to vote on the transaction. *Id.*

At the time of Mr. Weil's termination as CEO and removal from the PECo Board, his CEO Compensation Plan provided for a yearly salary of $260,000. *Id.* at ¶ 15. Per this Compensation Plan, upon termination, Mr. Weil was to be paid twelve months' severance in the amount of $260,000, as well as twelve months of COBRA continuation premium payments. *Id.*

At the time of the filing of the amended complaint, Mr. Weil had received seven $10,000 checks. *Id.*. All attempts that Weil made to resolve the matter were purportedly futile. *Id.* at ¶ 16.

On August 29, 2011, PECo and PECO Holdings Corp. filed suit against Mr. Weil in the Supreme Court of New York seeking a declaratory judgment as to the amounts owed by these companies to Weil pursuant to his employment agreements with them. *Id.* at ¶ 17. This suit alleges that Mr. Weil misrepresented PECo earnings to Mr. Naggar in order to obtain an unjustified bonus. *Id.* at ¶ 17.

Plaintiffs Mr. Weil, *et al.*, then filed their Original Complaint in this case on October 7, 2011, in the Miami County Court of Common Pleas. Then on December 8, 2011, Defendants Mr. Naggar, *et al.*, filed a Motion to Dismiss. On December 9, 2011, the Plaintiffs filed their Amended Complaint. Plaintiffs' Amended Complaint charges Defendants with breach of contract, breach of fiduciary duty, and shareholder oppression. Defendants then removed this case to federal court on December 22, 2011, asserting complete preemption and federal question jurisdiction. Plaintiffs have moved the court to remand the action to state court.

## II.     Standard of Review

On a motion for remand, the question is whether the district court lacks subject matter jurisdiction. 28 U.S.C. § 1447(c). In other words, the issue is whether the case was properly removed in the first instance. *Provident Bank v. Beck,* 952 F. Supp. 539, 540 (S.D. Ohio 1996).The removing party has the burden of demonstrating that the district court has jurisdiction. *Eastman v. Marine Mechanical Corp.*, 438 F.3d 544, 549 (6th Cir. 2006). The removal statute should be strictly construed and all doubts resolved in favor of remand. *Her Majesty The Queen v. City of Detroit,* 874 F.2d 332, 339 (6th Cir. 1989). The primary issue for the Court is whether the Plaintiffs' well-pleaded complaint asserts a cause of action created by federal law or depends

on the resolution of a substantial question of federal law. *Jordan v. Humana Military Healthcare Services, Inc.*, 2006 WL 1207914, *1 (S.D. Ohio) (J. Rose).

**III.    Analysis**

Removal of an action to federal court based on original jurisdiction is provided for in 28 U.S.C. §§ 1441(a), 1331. Pursuant to § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed" to district court by the defendants. Federal district courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The Defendants here assert that the Plaintiffs' Amended Complaint contains a claim "arising under" federal law.

"The 'arising under' gateway into federal court has two distinct portals." *Eastman v. Marine Mechanical Corp.*, 438 F.3d 544, 550 (6th Cir. 2006). This Court has original jurisdiction if the Plaintiffs' well-pleaded complaint establishes that either federal law creates the cause of action, or that Plaintiffs' right to relief involves the resolution or interpretation of a substantial question of federal law. *Id*. At issue in this case is the former of the two.

The well-pleaded complaint rule provides that "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Loftis v. United Parcel Serv., Inc.*, 342 F.3d 509, 514 (6th Cir. 2003) (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987)). Because the plaintiff is the master of his complaint, the fact that a claim *could be* stated under federal law does not prevent a plaintiff from stating it under state law only. *Eastman v. Marine Mechanical Corp.*, 438 F.3d 544, 550 (6th Cir. 2006) (citing *Alexander v. Electronic Data Sys. Corp.*, 13 F.3d 940, 943 (6th Cir. 1994)).

There is an exception, however, to this well-pleaded complaint rule, which allows the

removal of a state claim "when a federal statute wholly displaces the state-law cause of action through complete pre-emption." *Aetna Health, Inc. v. Davila*, 542 U.S. 200, 207 (2004) (quoting *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 8 (2003)). ERISA, and thus its COBRA Amendment, is such a statute that allows for complete preemption. *Id.* at 207. Defendants seek to invoke this avenue as grounds for removal.

### A. Federal Question Jurisdiction

Defendants contend that one of Plaintiffs' new claims within the Amended Complaint invokes original federal jurisdiction. Specifically, Defendants' removal to this Court is predicated on the notion that the Plaintiffs' use of the phrase "failed to . . . issue a COBRA notice . . ." (Exh. I ¶ 21) within the Amended Complaint's[1] state-law breach of contract claim is sufficient to invoke federal question jurisdiction. Defendants, therefore, maintain that Plaintiff Weil's intent in his Amended Complaint is to assert a claim to recover damages based on Defendant PECo's failure to issue a mandatory COBRA notice under 29 U.S.C. § 1166.

Plaintiffs respond by insisting that federal question jurisdiction does not exist in this case. In their Reply To Defendants' Opposition To Plaintiffs' Motion For Remand, Plaintiffs repeatedly contend that their use of the phrase "failure to . . . issue a COBRA notice . . ." was merely to provide factual background for their Ohio state-law breach of contract claim. To show that they are not making a COBRA claim, Plaintiff's draw attention to their breach of contract claim, which states that "Pursuant to the Compensation Plan, PECo is obligated to pay Mr. Weil's severance pay, vacation pay, reimburse him for his expenses, and pay the COBRA continuation obligation to maintain Mr. Weil's health insurance coverage." Plaintiffs also direct

---

[1]The Court expresses no opinion on the question of whether the claims as stated in the Original Complaint were removable under 28 U.S.C. § 1441. The complaint can no longer be removed for claims asserted in the Original Complaint.

the Court to the last paragraph of this breach of contract claim, where the relief Plaintiff Weil seeks is limited to "severance pay," "vacation pay," "payment of the COBRA continuation obligation," and "declaratory relief and recovery of costs, pre-judgment and post-judgment interest, and reasonable attorney fees." Indeed, Plaintiffs' reply points out that this list of requested relief does not include relief based on any COBRA violation by stating that "Plaintiff is not seeking recovery for a COBRA violation, or *any* of the remedies available to Plaintiff for a COBRA violation" (Doc. 16, at 2) (emphasis added), and that "Plaintiff did not seek in his Amended Complaint the statutory penalties to which he is entitled in the amount of up to $110.00 per day for the violation. 29 C.F.R. § 2575.502c-1." *Id.* at 2, n.1.

Last, the Court notes that there are other differences between the Original Complaint and the Amended Complaint, including the addition of violations of Delaware law and the identification of a new defendant.

The Court is convinced that Plaintiffs have sufficiently explained their choice of words in their Amended Complaint, and as such holds that they are not using "artful pleading" to escape federal subject matter jurisdiction.

### B. Complete Preemption

Should it not readily appear to the Court that a "federal question is presented on the face of the plaintiff's properly pleaded complaint," Defendants also contend that the claim is subject to the complete preemption exception recognized in *Davila*. 42 U.S. 200, 210 (2004). The Defendants here extract the appropriate preemption test from *Davila* by stating that "A state law claim is encompassed within Section 502(a) if: (i) the plaintiff, at some point in time, could have brought the claim under ERISA Section 502(a); and (ii) there is no other independent duty that is implicated by the Defendant's actions." Doc. 14, at 5. They then apply this test by relying

heavily on *Armiger*, a case where the plaintiff alleged that the defendant had violated a provision of California's Labor Code by failing to provide the plaintiff with COBRA notice. *Armiger v. Kiewit Constr. Co.*, 2010 WL 1239554 (N.D. Cal. Mar. 26, 2010). Defendants attempt to invoke the *Armiger* opinion to show that both prongs of the *Davila* test were met in the instant case:

> First, as in *Armiger*, Weil could have brought his claim under ERISA. Indeed, Plaintiffs **admit** this when they argue in their Motion for Remand that PECo's alleged failure to issue a COBRA notice is a "violation of federal law that constitutes a form of damages" in support of his breach of contract claim.
>
> . . .
>
> Second, . . . [j]ust as in *Armiger*, Plaintiffs cannot avoid preemption by attempting to recharacterize their claim for failure to provide a COBRA notice as a state-law claim. Notably, Weil can point to no source other than federal law for his allegation that he was entitled to the COBRA notice, or to damages based upon a failure to provide such notice, and he has already specifically invoked federal law in making that claim.

Doc. 14, at 6-7 (emphasis in original).

Plaintiffs correctly distinguish the case at bar from the *Armiger* case. They illustrate that "Weil is not seeking the statutory remedies available for violations of COBRA, and unlike *Armiger* and *Davila*, Weil has not asserted a violation of a state-law variation to COBRA . . . . The Ohio General Assembly, like the California legislature, enacted a variation of COBRA. *See, e.g.*, R.C. 3923.38 and R.C. 1751.53." Doc. 16, at 5, n.2. Plaintiffs then rely on the *Poss* case, where the plaintiff contended that at the time of his separation, defendants orally promised continued health insurance coverage. *Poss v. Chattanooga Gas Co.*, 2007 WL 4146686, *1 (E.D. Tenn.). Indeed, the Plaintiffs' understanding, and subsequent analysis, of the two-prong *Davila* test is correct here:

> An action may be brought under ERISA "to recover benefits due under the terms of a plan, to enforce rights under the terms of a

> plan, or to clarify rights to future benefits under the terms of a
> plan." 29 U.S.C. 1132. Plaintiff[] [Weil's] claims for breach of
> contract do not involve "the terms of a plan." As such, Plaintiff
> could not have brought his breach of contract claim under ERISA.
> 29 U.S.C. 1132. . . . The [*Poss*] Court held that *Davila* was
> inapplicable because the plaintiffs did not take issue with the scope of
> coverage under an ERISA plan. *Poss* supra, at *3.
>
> . . .
>
> [Instant] Defendants' obligation to pay for the COBRA
> continuation coverage is based on the employment contract entered
> into by the parties, and not based on the terms of an ERISA
> covered plan. . . . *Poss* held that "Unlike in *Davila*, Plaintiffs'
> claim does not hinge on the language of the ERISA-governed
> healthcare plan itself . . . Instead, Plaintiffs seek to enforce an
> alleged oral contract." *Id.* at *3. The [*Poss*] Court held that the
> plaintiffs' allegations of an alleged oral contract created an
> "independent legal duty". *Id.* at *4.

Doc. 16, at 5, 7.

The Court finds the similarities between the instant case and *Poss* to be compelling. First, Plaintiff Weil here was contractually promised continued post-separation COBRA coverage under his CEO Compensation Plan, which is much akin to the oral promise made to the plaintiff in *Poss*, as Plaintiff Weil "take[s] issue with the duration of coverage, not the substantive scope of coverage." *Poss*, at *3. Next, Plaintiff Weil is seeking to enforce this contractual promise, rather than to recover benefits that were denied to him under the ERISA/COBRA plan itself, which is on point with *Poss*. Moreover, the existence of the Compensation Plan agreement established an "independent legal duty," just as the oral contract did in *Poss*. Indeed, as in *Poss*:

> "Plaintiffs refer to ERISA-governed benefits to which Mr. Poss was
> entitled to *while employed by Defendants* in order "to articulate
> specific, ascertainable damages...." *Marks v. Newcourt Credit Group,
> Inc.,* 342 F.3d 444, 453 (6th Cir. 2003). This is an insufficient basis
> upon which to find complete preemption. *Briscoe v. Fine,* 444 F.3d
> 478, 499 (6th Cir. 2006). Stated another way . . . [n]either party has

> submitted anything to show that an ERISA-governed plan may
> grant what Plaintiffs are now asking for–namely, post-separation
> health insurance . . . .

*Poss*, at *4 (emphasis in original). Accordingly, for purposes of complete preemption under ERISA, the Court today finds the reasoning of *Poss* to be compelling, as we "cannot conclude that 'at some point in time, [Plaintiff Weil] could have brought his claim under ERISA § 502(a)(1)(B) . . . .'" *Id.* The Court is not convinced that the Plaintiffs are "attempting to recharacterize [a] claim for failure to provide a COBRA notice as a state-law claim" as Defendants allege.

### *C. Timeliness of Removal*

Last, as the "failure to . . . issue a COBRA notice . . ." verbiage was only first added by the Plaintiffs in their Amended Complaint, Defendants posit that their 30-day window to remove this case under 28 U.S.C. § 1446(b)(1) began once the Amended Complaint was filed, which would make the removal of this case timely.

The Plaintiffs here, on the other hand, propose that, since their Amended Complaint does not assert any new federal claims, the Defendants' removal of the case was not timely. They further charge the Defendants with frivolously removing this case, and ask for attorney fees to accompany the granting of their Motion For Remand. Because we find the Amended Complaint to be sufficiently ambiguous as to its intended claims, we will not award these fees.

## IV. Conclusion

Because Plaintiffs have disavowed any and all COBRA claims stemming from this case, and because they have sufficiently persuaded the Court that their intent is not to seek any relief based on COBRA violations, the Motion of Plaintiffs Robert L. Weil, *et al.*, to Remand Action to State Court, (Doc. 11), is **GRANTED**. This case is hereby **REMANDED** to the Court of

Common Pleas of Miami County, Ohio. The clerk shall enter judgment accordingly, without attorney fees, and terminate this case from the docket records of the United States District Court for the Southern District of Ohio, Western Division at Dayton.[2]

**DONE** and **ORDERED** in Dayton, Ohio, on Tuesday, June 5, 2012.

                                                   s/Thomas M. Rose
                                             THOMAS M. ROSE
                                   UNITED STATES DISTRICT JUDGE

---

[2] The Court acknowledges the valuable contribution and assistance of judicial extern Matthew H. Walker in drafting this opinion.